**In re Anonymous No. 83 D.B. 88**

Disciplinary Board Docket no. 83 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

FRIEDMAN, *Vice Chairman,* October 22, 1993—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to this honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

The Supreme Court of Pennsylvania issued an order on August 8, 1988, immediately suspending respondent, [   ] from the practice of law. The order was entered in accordance with Rule 214(d) Pa.R.D.E. on the basis of respondent's June 10, 1988 conviction in the Court of Common Pleas of [   ] County on charges of bribery in official and political matters in violation of section 4701(a)(3) of the Pa. Crimes Code (18 Pa.C.S. §4701(a)(3)) and criminal conspiracy in violation of section 903(a)(1) of the Pa. Crimes Code (18 Pa.C.S. §903(a)(1)). As a result of his conviction, respondent was sentenced to pay costs, a fine of $5,000 and was placed on probation for a period of five years on each count to run concurrently.

Post-trial motions were filed. By order of the Court of Common Pleas of [   ] County, respondent's motion for a new trial and arrest of judgment was denied on September 12, 1988. Thereafter, respondent filed a direct appeal to the Superior Court of Pennsylvania. On January 19, 1990 the Superior Court filed its opinion affirming the judgment of the lower court. Respondent filed a petition for allowance of appeal to the Pennsylvania Supreme Court which was denied on October 17, 1990.

The Office of Disciplinary Counsel filed a petition for discipline on April 25, 1991. The petition charged that respondent's criminal conduct had involved moral turpitude; dishonesty, fraud, deceit or misrepresentation; was prejudicial to the administration of justice and adversely reflected on respondent's fitness to practice law in violation of D.R. 1-102(A)(3), D.R. 1-102(A)(4), D.R. 1-102(A)(5) and D.R. 1-102(A)(6), respectively.

On June 6, 1991, respondent filed an answer to the petition for discipline in which he denied all culpability for the conduct set forth in the petition and moved for a stay of all proceedings pending collateral appellate review. The basis for respondent's answer was that the petition for discipline was (a) founded on conclusions of guilt not yet resolved; (b) that the proceedings were premature and (c) that all appellate review had not been exhausted.

Due to the lack of availability of the parties for a disciplinary hearing within 60 days as required by Disciplinary Rule 87.7, the board, by order dated August 2,

1991, granted an extension and scheduled the hearing for November 1, 1991. By letter dated October 25, 1991, respondent advised the Hearing Committee and petitioner that he had filed a petition for new trial pursuant to the Post-Conviction Relief Act and requested a postponement of the November 1, 1991 disciplinary hearing until after the Post-Conviction Relief Act petition hearing.

On or about October 31, 1991, respondent sought a postponement of the November 1, 1991 hearing from the board chairman. As a result, the November 1 hearing was postponed and the parties were requested and did submit briefs as to whether the disciplinary hearing should go forward. After consideration of the briefs filed by both parties, the authorities cited therein and the applicable Pennsylvania Rules of Disciplinary Enforcement, on November 19, 1991, the board denied respondent's motion to stay the disciplinary hearing.

On December 9, 1991, the matter was re-scheduled for a hearing before Hearing Committee [    ] to be held on January 23, 1992. Thereafter, on December 20, 1991, respondent filed a petition for review of the Disciplinary Board's November 19, 1991 decision with the Supreme Court of Pennsylvania. On January 21, 1992, the Supreme Court denied the respondent's petition.

A hearing on this matter was held before Hearing Committee [    ] on January 23, 1992 and was chaired by [    ], Esquire and included members [    ], Esquire and [    ], Esquire. At this hearing the petitioner presented no witnesses but submitted numerous exhibits. The respondent offered no exhibits and no witnesses except

the respondent himself who testified pursuant to section 85.151. Through his counsel, respondent made an oral motion to continue the hearing pending a determination of the post-conviction relief petition. After due consideration, the motion was denied. On May 21, 1993, the Hearing Committee filed its report on the matter and recommended that respondent be disbarred from the practice of law.

On July 19, 1993, respondent filed a petition to reopen the record to receive into evidence information regarding the respondent's recently diagnosed illness and respondent's successful completion of his criminal probation. On July 22, 1993, by order of the board, the record was reopened, without remand to the Hearing Committee, to enter into evidence respondent's exhibits 1 and 1A relating to respondent's conduct during probation and his recently diagnosed illness, respectively. In addition, the record was ordered to remain open pending receipt of additional evidence relating to the formal termination of respondent's criminal probation. Such evidence was received on August 16, 1993.

Respondent filed a brief on exceptions on July 26, 1993, in which he averred that disbarment without retroactivity to the date of his temporary suspension was in error as it (a) did not take into account relevant and material mitigating circumstances; (b) gave weight to certain purported aggravating circumstances and (c) erred in regard to certain procedural matters. Further, respondent advocated for a sanction of a retroactive suspension and requested oral argument. On August 19, 1993, the Office of Disciplinary Counsel filed a brief opposing exceptions in which Disciplinary Counsel agreed with the Hearing

Committee that disbarment of respondent without retroactivity was proper.

Oral argument was heard on August 25, 1993, by a panel consisting of board members Philip B. Friedman, Esquire, Frederick Wells Hill, Esquire and Gerald C. Paris, Esquire. The matter was adjudicated at the August 27, 1993 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, PA 15219, is invested pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], is currently suspended from the practice of law by order of the Supreme Court of Pennsylvania dated August 8, 1988, entered pursuant to Rule 214(d) Pa.R.D.E.

(3) Respondent was born in June 1916 and was admitted to the practice of law in 1939. He last maintained an office at [   ].

(4) On April 29, 1987, respondent accompanied his client, [A], who had been charged with driving under

the influence, to a preliminary hearing in [    ] Township, [    ] County.

(5) Prior to the hearing, respondent spoke with the arresting police officer, [B]. During that conversation respondent said, inter alia that his client had a couple thousand dollars to spread around between Officer [B] and the [C].

(6) Officer [B] reported this offer of a bribe to the district attorney's office and arrangements were made to "wire" Officer [B] in order that he might tape-record his conversation with respondent at a May 6, 1987 hearing for [A].

(7) Officer [B] had conversations with respondent outside the magistrate's office on May 6, 1987. Respondent asked [B] if he was "wired." [B] responded in the negative. These conversations were tape-recorded. Respondent and [B] discussed the officer's relationship with the district attorney and the district judge and what the officer could do to help respondent's client, [A]. Respondent wrote the figure $800 on a yellow legal tablet and showed it to [B]. [B] informed the respondent that the amount of $1,000 had been previously offered and respondent proceeded to cross out the 800 figure and write down 1,000.

(8) Although Officer [B] did not say he would accept the money, respondent said he would check with his client to see if he would agree with this deal.

(9) Respondent went into a nearby restaurant and returned with [A] who handed Officer [B] a pamphlet and said, "It's in there."

(10) [B] went directly into the men's room in the magistrate's office and counted the money in the presence of two detectives from the district attorney's office.

(11) Respondent was arrested and charged with committing the criminal acts of bribery in official and political matters in violation of 18 Pa.C.S. §4701(a)(3), and criminal conspiracy in violation of 18 Pa.C.S. §903(a)(1).

(12) On June 10, 1988, respondent was tried in a nonjury trial. Respondent did not testify in his own defense. Several character witnesses testified as to respondent's good reputation.

(13) Respondent was found guilty on both counts (bribery in official and political matters and criminal conspiracy) and on June 10, 1988, he was sentenced to the payment of costs, a $5,000 fine and five years probation on each count, the probation to run concurrently.

(14) Respondent has been diagnosed and is currently being treated for cancer.

(15) On June 10, 1993, respondent's probation expired and he successfully fulfilled all of the court ordered terms and conditions of said probation.

(16) During respondent's five years of probation his status was "minimum supervision" and this status dispensed with the need for respondent to report periodically to the Probation Office.

### III. CONCLUSIONS OF LAW

(1) Respondent's conviction for bribery in official and political matters (18 Pa.C.S. §4701(a)(3)) and criminal conspiracy (18 Pa.C.S. §903(a)(1)) is conclusive evidence

that respondent committed these criminal offenses as charged. Rule 214(e) Pa.R.D.E.

(2) Respondent's conviction is an independent ground for disciplinary action. Rule 203(b)(1) Pa.R.D.E.

(3) Respondent's professional misconduct occurred in April and May of 1987 and, therefore, is governed by the former Disciplinary Rules of the Code of Professional Responsibility rather than the Rules of Professional Conduct which apply to conduct occurring after March 31, 1988.

(4) By his action of bribing Officer [B] and by his conspiring with his client to do the same, respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(3)—Prohibiting an attorney from engaging in illegal conduct involving moral turpitude;

b. D. R. 1-102(A)(4)—Prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

c. D.R. 1-102(A)(5)—Prohibiting an attorney from engaging in conduct that is prejudicial to the administration of justice; and

d. D.R. 1-102(A)(6)—Prohibiting an attorney from engaging in other conduct which adversely reflects on the attorney's fitness to practice law.

## IV. DISCUSSION

In light of respondent's conviction, there is no question presented as to whether misconduct occurred. Rule 214(e) "Pa.R.D.E. states that a certificate of conviction serves

as *conclusive* evidence of the commission of a crime in any disciplinary proceeding commenced against an attorney based upon the conviction." (emphasis in original) *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 19, 584 A.2d 296, 297 (1990). Moreover, respondent's conviction of the serious crimes of bribery and conspiracy constitutes a per se basis for discipline pursuant to Rule 203(b)(1) Pa.R.D.E. Thus, having established misconduct and the basis for the imposition of discipline, the only outstanding issue is the measure of discipline to be imposed.

It is axiomatic that the principal purpose of the lawyer discipline system is the determination of the fitness of an attorney to continue the practice of law. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1186 (1987); *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 317, 507 A.2d 1215, 1218 (1986). The system serves to protect the courts and the public. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 281, 472 A.2d 186, 190 (1983). Thus, "[d]isciplinary sanctions 'are not primarily designed for their punitive effects, but for their positive effect of protecting the public and the integrity of the courts from unfit lawyers.' " *Office of Disciplinary Counsel v. Tumini,* 499 Pa. 284, 288, 453 A.2d 310, 312 (1982), quoting *In re Berlant,* 458 Pa. 439, 441, 328 A.2d 471, 473 (1974). Furthermore, the system must preserve the public confidence in the legal profession and the judicial system. *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 402, 441 A.2d 1197, 1200 (1982).

Therefore, when a disciplinary proceeding is based upon an attorney's conviction of a serious crime, the issue be-

comes whether the attorney's character, as shown by his conduct, makes the attorney unfit to practice law from the standpoint of protecting the public and the courts. *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 181, 512 A.2d 607, 609 (1986), citing *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975). Therefore, it is necessary to examine the events surrounding the criminal conviction in order "to weigh the impact of the conviction upon the measure of discipline" to be imposed. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 391, 441 A.2d 1193, 1195 (1982), quoting *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 320, 383 A.2d 952, 953 (1978).

Consideration of the underlying facts does not, however, provide respondent with an opportunity to relitigate his conviction. Thus, respondent's continued assertion of his lack of culpability does not warrant a decision that discipline should not be imposed. *Costigan, supra* at 19-20, 584 A.2d at 298.

Respondent's conduct has been conclusively established. Immediately prior to the preliminary hearing for [A], respondent's client, respondent told the arresting officer, [B], that his client had a couple of thousand dollars to spread around. The officer notified the district attorney's office of this bribe and arranged to wear a body wire at his next meeting with the respondent.

The subsequent meeting between Officer [B] and respondent was tape-recorded. Respondent asked the officer if he was wired and the officer said no. Respondent then discussed, inter alia, what the officer could do to help

[A]. Respondent negotiated the amount of the bribe with the officer and was present when his client handed the money to Officer [B].

The tape-recorded conversation unquestionably proves not only that a crime was committed, but that respondent knew he was engaged in criminal activity. Respondent's conduct was totally inconsistent with the high ethical standards of the profession and with a lawyer's obligation to maintain a reputation that is beyond reproach. *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 528, 426 A.2d 1138, 1143 (1981).

Respondent's conduct violated Disciplinary Rules, D.R. 1-102(3), D.R. 1-102(4), D.R. 1-102(5) and D.R. 1-102(6). Moral turpitude has been defined as "anything done knowingly contrary to justice, honesty, principle, or good morals" *Simon, supra* at 320, 507 A.2d at 1220 (citation omitted). Respondent's unlawful conduct clearly involved moral turpitude. In addition, respondent's misconduct evidences serious acts of dishonesty. Furthermore, bribing a police officer involved in a criminal prosecution is, without question, highly prejudicial to the administration of justice. Finally, respondent's criminal conduct adversely reflects on his fitness to practice law.

Integrity in an attorney's professional conduct is essential for the protection of the public, the courts and the profession itself. *Stern, supra* at 80-81, 526 A.2d at 1186. Respondent's lack of moral character and his dishonesty cannot be justified. Such misconduct creates a danger to the public and a threat to the fair administration of justice. Moreover, it undermines the public's

confidence in the profession and in the judicial system. See *Casety, supra* at 182, 512 A.2d at 610 ("even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession").

Disbarment is an extreme sanction and is imposed with great caution. *Johnson Disbarment Case,* 421 Pa. 342, 345, 219 A.2d 593, 595 (1966). Further, disbarment is reserved for the most egregious cases because it represents a termination of the license to practice law without a promise of its restoration at any future time. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 586-587, 506 A.2d 872, 879 (1986). The instant matter is just such an egregious case. Respondent's misconduct involved bribery of a police officer and criminal conspiracy. "Where one who has sworn to uphold the law actively breaches it, his fitness to practice is unquestionably destroyed." *Casety, supra* at 183, 512 A.2d at 610.

Having fully considered respondent's misconduct in violation of our criminal laws and the Disciplinary Rules, the board concurs with the Office of Disciplinary Counsel and the Hearing Committee that disbarment is the only appropriate sanction. However, in recognition of respondent's long legal career of almost 50 years, the current state of his health, and the fact that respondent has been suspended from the practice of law for over five years, the board recommends that the order of disbarment be made retroactive to August 8, 1988, the date when respondent was suspended from the practice of law by order of the court.

## V. RECOMMENDATION

Based upon the foregoing discussion, the Disciplinary Board of the Supreme Court respectfully recommends

to your honorable court that respondent, [NN], be disbarred from the practice of law retroactive to August 8, 1988.

The board further recommends that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Hill, Paris, Sloan, Sultz and Dean Carson did not participate in the adjudication.

## ORDER

And now, December 21, 1993, respondent's request for a stay is denied. Upon consideration of the report and recommendations of the Disciplinary Board dated October 22, 1993, it is hereby ordered that [respondent] be and he is disbarred from the Bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Papadakos did not participate in this matter.

Messrs. Justice Zappala and Cappy dissent and would disbar respondent retroactive to August 8, 1988.