**In re Anonymous No. 51 D.B. 92**

Disciplinary Board Docket no. 51 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

WITHEREL, *Member,* February 28, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

[    ], respondent, was admitted to the practice of law in the Commonwealth of Pennsylvania on or about October 22, 1979. Respondent formerly maintained a law office in [    ], [    ] County, Pennsylvania. His current residence address is [    ].

In his capacity as the executive director of the [A] in [    ] County, respondent was indicted on or about November 8, 1991, by a grand jury in the United States District Court for the [    ] District of Pennsylvania and charged with one count of conspiracy to defraud the United States of America, a violation of 18 U.S.C. §371. The charge stemmed from respondent's participation in a conspiracy to defraud the Federal Department of Housing and Urban Development, of approximately $327,313 in federal block grant funds. These monies were earmarked to assist low and moderate income homeowners. Instead, respondent allocated some of the funds to improper loans, entertainment and personal expenses. Some federal funds were also expended to the advantage of political allies of respondent.

On or about November 26, 1991, respondent pled guilty to the conspiracy to defraud count. Respondent

also acknowledged that the total amount of the fraud perpetrated against the federal government calculated to $327,313.

On March 30, 1992, the Honorable [B] United States District Court for the [     ] District of Pennsylvania, sentenced respondent to serve a term of probation of five years, to make restitution in the amount of $37,155.80, to pay a fine of $4,000 and a special assessment of $50 and imposed other conditions of probation. Respondent did not appeal the judgment of sentence.

By order of the Supreme Court of Pennsylvania dated June 3, 1992, respondent was temporarily suspended from the practice of law pursuant to Rule 214, Pa.R.D.E. The Office of Disciplinary Counsel then filed a petition for discipline on July 1, 1992. The petition charged that as a result of respondent's conviction, respondent had engaged in misconduct constituting grounds for discipline under Rule 203(b)(1), Pa.R.D.E. The petition also charged that respondent's criminal conduct also violated the following Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct:

(1) D.R. 1-102(A)(3)—A lawyer shall not engage in illegal conduct involving moral turpitude;

(2) D.R. 1-102(A)(4)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(3) D.R. 1-102(A)(6)—A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(4) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act which reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; and

(5) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

On September 8, 1992, respondent filed his answer, admitting both the factual allegations and disciplinary violations enumerated in the petition. Shortly thereafter, respondent stipulated to these admissions. The matter was referred to Hearing Committee [     ], which was chaired by [     ], Esquire, and included members [     ], Esquire and [     ], Esquire. A hearing was held on February 18, 1993. The facts establishing misconduct being admitted, the sole issue before the Hearing Committee was the extent of the discipline to be imposed. Thus, the circumstances of the criminal conduct, as characterized by both the disciplinary counsel and respondent, were received as evidence on the issue of mitigation of discipline.[1]

On July 8, 1993, the Hearing Committee filed its report on the matter and recommended that the respondent be suspended from the practice of law for a period of three years retroactive to June 3, 1992, or such period when his federal term of probation terminated. As a condition of reinstatement, the committee ordered that respondent provide proof of payment of all fines imposed and restitution ordered by the United States District Court. No exceptions were filed by either party.

The matter was adjudicated at the August 27, 1993 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

---

1. We agree with the Hearing Committee that the probative worth of certain newspaper articles, offered as evidence against mitigation by the disciplinary counsel, was not outweighed by their prejudicial value. The articles were thus not considered by the board in reaching its decision here.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ], is a formerly admitted attorney in the Commonwealth of Pennsylvania, having been admitted to practice on or about October 22, 1979 and having been suspended from the practice of law by order of the Supreme Court of Pennsylvania dated June 3, 1992.

(3) Respondent formerly maintained an office for the practice of law in [ ], [ ] County, Pennsylvania. His residence address is [ ].

(4) At all times material to the instant proceedings:

"(a) [ ] County, Pennsylvania, was an authorized recipient of block grant funds from HUD;

"(b) The [A], was a government entity created by [ ] County to expend and administer block grant funds in furtherance of the federal goals of eliminating slums and blight, and benefitting low and moderate income persons; and,

"(c) Respondent's duties, as executive director of the [A], included coordinating, along with the loan board and [ ] County's HUD consultant, the expenditures of block grant funds for activities permitted under federal law, including the award of low interest loans to eligible businesses."

(5) During a time period from in or about January 1985, until in or about 1990, in the [    ] District of Pennsylvania and elsewhere, respondent and others conspired to defraud the United States of America, specifically HUD, by diverting, for improper purposes, approximately $327,313 in federal block grant funds.

(6) Respondent engaged in the foregoing conduct as an active participant in the scheme, plan or design to defraud the United States of America. The acts which respondent, in concert with others, performed in furtherance of the conspiracy included, but are not limited to, the following:

"(a) By deceit, craft, trickery and dishonest means, defrauded the United States of America by interfering with and obstructing the lawful governmental functions of HUD by causing to be represented to HUD that block grant funds, allocated to [    ] County and administered by the [A], were spent as required by federal law and in furtherance of the federal objectives of eliminating slums and blight and benefitting low and moderate income persons;

"(b) Deceiving HUD into believing that the expenditure of approximately $68,350 in block grant funds was an eligible loan to the [    ] County [C] to purchase and distribute books, brochures, and posters to increase business in [    ] County and that the loan furthered the federal objective of benefitting low and moderate income persons, when in fact: (1) the expenditure was not a loan; (2) the [C] was ineligible to receive block grant funds; and (3) the money was used in lieu of local government funds to finance the printing of historical maps and booklets for school children, which had no benefit to low and moderate income persons;

"(c) Deceiving HUD into believing the expenditure of approximately $40,000 in block grant funds was

an eligible loan to [D], for the purchase of equipment and that the loan furthered the federal objective of benefitting low and moderate income persons and could lead to the creation of two new jobs for low and moderate income persons, when in fact: (1) the funds were used to pay a prior debt of [D], to the [E], and thereby prevent the foreclosure of a private residence used as collateral on the [E] loan; (2) expenditures of the funds were not authorized by the [A] board charged with approving low interest loans of federal funds; and, (3) no new jobs for low and moderate income persons were expected;

"(d) Deceiving HUD into believing that the expenditure of approximately $100,000 in block grant funds was an eligible loan from the [F] to the [G] for office renovations, that the loan furthered the federal objective of benefitting low and moderate income persons and that it would create two new jobs and retain four jobs for low and moderate income persons, when in fact: (1) [G's] use of the block grant funds did not create or retain, nor was it intended to create or retain any jobs for low and moderate income persons; and, (2) the loan agreement failed to include a required provision mandating that the funds be used to benefit low and moderate income persons;

"(e) Deceiving HUD into believing that the payment of approximately $10,000 by the [A] to a private consultant from [H] was for the purpose of attracting foreign business to [    ] County, and was a lawful, necessary and proper expenditure of block grant funds, which furthered the federal objectives of creating new jobs of low and moderate income persons, when, in fact, the services duplicated existing [A] services, did not attract foreign business, and the purpose of the payment was to reward a consultant from [H] for political support provided to an elected official from [    ] County;

"(f) Deceiving HUD into believing that the expenditure of approximately $60,563 by the [A] for a videotape production and the purchase of various gifts was a lawful, necessary and proper expenditure of block grant funds in furtherance of the federal objectives, when, in fact, the money was used to produce a video on an expedited basis for use in a 1988 political campaign involving an elected official from [    ] County;

"(g) Deceiving HUD into believing that the payment of approximately $1,863 in unauthorized salary payments to himself was a lawful, necessary and proper expenditure of federal block grant funds and furthered the federal objectives, when, in fact, the payments were improper and contrary to [    ] County's representation to HUD concerning the source of respondent's salary; and,

"(h) Deceiving HUD into believing that the expenditure of approximately $46,477 by the [A] for administrative expenses was a lawful, necessary and proper expenditure of block grant funds and furthered the federal objectives, when, in fact, the funds were spent for banquets, meals, bar bills, trips, gifts and personal expenses, which are not allowable expenses under federal law."

(7) As a result of respondent's illegal conduct as set forth hereinabove, he was charged in a one count information on or about November 8, 1991, in the United States District Court for the [    ] District of Pennsylvania, to Criminal no. [    ].

(8) In the aforesaid information, respondent was charged with one count of conspiracy to defraud the United States of America from in or about January 1985, until in or about 1990.

(9) On or about November 26, 1991, respondent pleaded guilty to one count of defrauding the United States of America.

(10) On or about March 27, 1992, the government filed a "motion for a downward sentencing departure pursuant to section 5K1.1 of the federal sentencing guidelines."

(11) On or about March 30, 1992, the Honorable [B], United States District Court of the [    ] District of Pennsylvania, granted the government's motion for downward departure from the sentencing guidelines.

(12) On or about March 30, 1992, Judge [B] sentenced respondent as follows:

"(a) A term of probation for five years;

"(b) Restitution in the amount of $37,155.80, to be paid in installments as determined by the probation office;

"(c) A fine of $4,000 to be paid in installments as determined by the probation office;

"(d) A special assessment of $50; and,

"(e) Other conditions of probation routinely imposed upon defendants of federal criminal cases."

(13) Respondent has not appealed the judgment of sentence imposed upon him by the United States District Court for the [    ] District of Pennsylvania.

(14) By order of the Supreme Court of Pennsylvania dated June 3, 1992, respondent was temporarily suspended from the practice of law pursuant to Rule 214, Pa.R.D.E.

(15) As a result of his conviction of a crime for which respondent was suspended pursuant to Rule 214, Pa.R.D.E., respondent has engaged in misconduct which constitutes an independent ground for discipline, pursuant to Rule 203(b)(1), Pa.R.D.E.

### III. CONCLUSIONS OF LAW

Respondent's November 26, 1991 plea of guilty to violating 18 U.S.C. §371 is a conviction under Rule 214(d), Pa.R.D.E.

Respondent's conviction constitutes a per se independent basis for discipline under Rule 203, Pa.R.D.E.

Respondent's criminal misconduct violated the following Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct:

(1) D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

(2) D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(3) D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(4) R.P.C. 8.4(b): It is professional misconduct for a lawyer to commit a criminal act which reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; and

(5) R.P.C. 8.4(c): It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

Respondent's criminal conviction in federal court is a per se ground for discipline pursuant to Enforcement Rule 203(b)(1), Pa.R.D.E. And, because the parties have stipulated to the violations of the Disciplinary Rules of the Code of Professional Responsibility, the Rules of Professional Conduct and the facts in support of these violations, the only issue before the board is the appropriate measure of discipline to be recommended to the Supreme Court of Pennsylvania. The circumstances of the conviction are the guideposts to determine the extent of the disciplinary recommendation.

Respondent's misconduct spanned approximately five years and evidenced itself by the misappropriation of $327,313 in federal funds. Rather than directing these funds to properly designated recipients, low and mod-

erate income homeowners, respondent diverted the money to fund loans to ineligible businesses; to finance production of a video which, as one of its purposes, highlighted the virtues of a political ally of respondent's; an improper allocation to pay for production of historical booklets; and the hiring of a consultant, an individual who was owed a favor by a county official. The funds were also used to pay for ineligible entertainment and personal expenses and bankrolled unauthorized salary payments. Respondent admits that effective implementation of the conspiracy required more than minimal planning. The funds' misuse was disguised by submitting documents to HUD which falsely certified that the funds were expended consistent with HUD's requirement.

Because "the purpose of our system [to] discipline is to protect the public and to maintain the integrity of the legal system from unfit attorneys," *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 24, 584 A.2d 296, 299 (1990), when a disciplinary proceeding arises from an attorney's conviction of a crime, our inquiry focuses on whether the attorney's misconduct renders him unfit to practice law. *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975).

Respondent's conduct evidences a disregard of the standards established to guarantee the integrity of the legal system. It is also evidence of the betrayal of the public trust, conduct previously found by the Supreme Court as particularly egregious. See *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981). While respondent's position of executive director did not necessitate his license to practice law, the execution of these duties required that respondent act in a fiduciary capacity, and he was, therefore, held accountable to the high standards of integrity outlined by the Code of Professional Responsibility. Respondent was entrusted with the public confidence of the citizens

of [    ] County to allocate federal monies to enhance their community. Instead, respondent violated this public trust by engaging in an activity designed to circumvent the proper use of the HUD funds. This conduct clearly demonstrates a willingness to forego fiduciary obligation in exchange for personal gain.

Respondent contends that certain and substantial circumstances mitigate against his discipline extending beyond a three year suspension and urges in support that which has been imposed in a matter of greater misconduct. See *In re Anonymous No. 52 D.B. 77,* 10 D.&C.3d 531 (1978) (while bribery and conviction would otherwise require disbarment, in light of lengthy and unblemished career and cooperation with disciplinary authorities, the board recommended three years suspension); *In re Anonymous No. 121 D.B. 88,* 5 D.&C.4th 289 (1989) (after respondent pled guilty to obstruction of justice arising from assistance in filing fraudulent medical claims, the board considered cooperation with government investigation and community service in recommending two year, three month suspension). But, see *In re Anonymous No. 25 D.B. 88,* 18 D.&C.4th 204 (1992) (respondent's criminal conviction of conspiracy to affect outcome of five criminal convictions required disbarment).

The board does acknowledge the respect enjoyed by respondent both in his community and by his colleagues in the legal profession. His portfolio of submissions attesting to his otherwise good character was quite impressive. The board also takes note that respondent appeared to have derived little personal financial benefit from his wrongdoing. Nonetheless, even if motivated by political largesse, rather than economic gain, respondent compromised his position of trust by compromising his ethical judgment and capitulating to the illegal demands of the political hierarchy. He there-

fore acted in utter disregard of the standards of legal professionalism.

Mindful of the obligation of public protection, respondent's unprofessional conduct, evidenced by his severe breach of fiduciary duty, demands that a substantial sanction be imposed.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended from the practice of law for a period of three years. The suspension is not to be applied retroactively.

As a condition of reinstatement, respondent must provide proof that payment of all fines imposed and restitution ordered by the federal court be satisfied.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Mr. Eckell recused himself.

Mr. Kerns dissents and would recommend that the suspension be applied retroactively.

Messrs. Hill, Paris, Sloane, Saltz and Dean Carson did not participate in the adjudication.

## ORDER

February 14, 1995—Rule to show cause entered by this court on August 16, 1994, is discharged. It is ordered that respondent be and he is suspended from the bar of this Commonwealth for a period of five years, retroactive to June 3, 1992, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.