**In re Anonymous No. 38 D.B. 91**

Disciplinary Board Docket no. 38 D.B. 91.

SCHILLER, *Member,* May 4, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

HISTORY OF PROCEEDINGS

On April 1, 1991, the Supreme Court of Pennsylvania issued an order discharging the rule entered on November 27, 1990, pursuant to Rule 214(d)(1), Pa.R.D.E., to show cause why respondent should not be placed on temporary suspension, and referred the instant matter to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E.

On May 7, 1991, the Office of Disciplinary Counsel filed a petition for discipline of respondent. The petition

was predicated upon respondent's July 2, 1990 conviction on two counts of violating section 1801(a), Article 37 of the Tax Law of the state of New York.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esq., and included [    ], Esq., and [    ], Esq. The committee held a hearing on September 16, 1991, and filed a report on January 21, 1992, recommending that respondent receive a public censure.

Both parties had filed earlier briefs to the Hearing Committee. The Office of Disciplinary Counsel had advocated imposition of a 10-month suspension, whereas respondent had argued that a public censure was appropriate.

The matter was adjudicated at the March 5, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the parties' following stipulation of facts.

(1) Respondent was born on April 20, 1948. He is married to [A], and they reside at [    ].

(2) In or about 1974, respondent was admitted to practice law in the state of New York.

(3) In or about 1975, respondent was admitted to practice law in the state of Florida.

(4) On October 25, 1989, respondent was admitted to the bar of the Supreme Court of Pennsylvania.

(5) From 1984 to the present time, respondent has been a partner in the law firm of [B], [    ].

(6) In 1984, respondent had partnership income of $60,918, which was subject to the New York state personal income and earnings tax set forth in section 601 of Article 22 of the New York Tax Law.

(7) In 1985, respondent had partnership income of $110,821, which subject to New York state personal income and earnings tax as set forth in section 601 of Article 22 of the New York Tax Law.

(8) In 1986, respondent had partnership income of $111,722, which was subject to New York state personal income and earnings tax as set forth in section 601 of Article 22 of the New York Tax Law.

(9) In 1987, respondent had net earnings of $174,426 from his law partnership; these net earnings were subject to New York state income and earnings tax under section 601 of Article 22 of the New York Tax Law.

(10) Respondent did not file his personal income and earnings tax returns for the taxable years of 1984, 1985, and 1986 on or before the 15th day of April of the following year. Respondent also did not file his 1987 return on or before the 15th day of August 1988.

(11) Respondent did not pay his personal income earnings tax for the taxable years of 1984, 1985 and 1986 on or before the 15th day of April of the following year. Respondent did not pay his personal income earnings tax for the taxable year of 1987 on or before the 15th day of August 1988.

(12) Respondent had an approximate unpaid tax liability with respect to each of the four consecutive taxable years, as follows: $3,345 in 1984; $7,337 in 1985; $8,257 in 1986; and $12,200.97 in 1987.

(13) Article 22, section 601 of the New York Tax Law imposes a personal income and earnings tax on residents, as well as non-residents working in the state of New York.

(14) Article 37, section 1802(a) of the New York Tax Law provides that:

"(a) Any person who, with intent to evade payment of any tax imposed under Article 22 or any related income or earnings tax statute, fails to file a return for three consecutive taxable years shall be guilty of a class E felony, provided that such person had an unpaid tax liability with respect to each of the three consecutive taxable years."

(15) Under the New York Penal Law when read in conjunction with section 1800 of Article 37 of the Tax Law, a class E felony is punishable by up to four years of imprisonment and a fine of up to $50,000.

(16) Article 37, section 1801(a) of the Tax Law provides:

"(a) Any person who, with intent to evade any tax imposed under Article 22 of this chapter or any related income or earnings tax statute, or any requirement thereof or any lawful requirement of the tax commission thereunder, shall fail to make, render, sign, certify or file any return, or to supply any information within the time required by or under the provisions of such article or any such statute, or who, with like intent, shall supply any false or fraudulent information, shall be guilty of a misdemeanor."

(17) Under the New York Penal Law, a misdemeanor is punishable by up to one year of imprisonment and a fine of up to $10,000.

(18) In or about 1989, the New York State Taxation and Finance Department began an investigation, which became known as the Lawyer's Project, to identify lawyers who were employed within the state but who did not file their New York state income tax returns or pay the tax imposed under Article 22 of the New York Tax Law. The investigators used a computer to match the tax returns of the partnerships against the personal filings of the partners.

(19) As a result of the year-long investigation, the New York state attorney general returned informations against 14 attorneys, one of whom was respondent.

(20) On or about April 4, 1990, the attorney general's office filed four informations against respondent, charging him with two counts of violating Article 37, section 1802(a) and with two counts of violating Article 37, section 1801(a).

(21) On April 26, 1990, the attorney general of the state of New York returned an indictment against respondent charging him with two counts of violating section 1802(a) and two counts of violating section 1801(a) of the Tax Law of the state of New York.

(22) The charges brought by the attorney general as a result of the Lawyer's Project investigation received much media attention throughout New York state. Respondent was identified by name in at least five of these articles.

(23) As a result of a negotiated plea bargain, on July 2, 1990, respondent pled guilty to the two misdemeanor counts charging him with violating section 1801(a) of the Tax Law in a case captioned *The People of the State of New York v. [Respondent],* Supreme Court, County of [    ], Indictment no. [    ], February Term, 1990.

(24) Under the terms of the negotiated guilty plea, the court sentenced [respondent] on July 2, 1990 to a term of imprisonment of 75 days in the [    ] County Penitentiary on each of the two counts, to run concurrently, together with a $10,000 fine and a $62 surcharge payable within 90 days from the date of sentencing.

(25) Respondent began serving his 75-day sentence on July 2, 1990, and he was released on August 17, 1990.

(26) Respondent paid the $10,000 fine and $62 surcharge on January 3, 1991.

(27) Pennsylvania Rule of Disciplinary Enforcement 214(i) defines the term "serious crime" as "a crime that is punishable by imprisonment for one year or upward in this or any other jurisdiction."

(28) Respondent's two convictions for violating 1801(a) of Article 37 of the Tax Law are for a "serious crime" as defined by Pa.R.D.E. 214(i).

(29) Pa.R.D.E. 214(a) provides that: "An attorney convicted of a serious crime shall report the fact of such conviction to the secretary of the board within 20 days after the date of sentencing."

(30) By letter dated July 27, 1990, and received by the Disciplinary Board on August 1, 1990, respondent advised the secretary to the Disciplinary Board of his two convictions.

(31) By rule to show cause dated November 27, 1990, the Supreme Court of Pennsylvania directed respondent to show cause why he should not be placed on temporary suspension.

We also find the following:

(32) We accept the stipulation of the following witnesses' testimony as already given in a disciplinary hearing in the state of New York:

(a) [C], Esq., [D], Esq., and [E], Esq. would all testify that they were members of the bar who held favorable opinions of respondent and knew others who shared this belief;

(b) [F], a client and friend, would offer similar favorable character testimony; and

(c) Rabbi [G] would testify that respondent is a well-respected member of his religious community.

(33) Respondent now has a personal accountant, which should help him insure that the financial and tax mismanagement which led to his conviction will not recur,

is currently undergoing counseling to get help for his problems, and is extremely remorseful.

(34) Respondent no longer owes any back taxes except for the year 1990, when his returns were timely filed.

## CONCLUSIONS OF LAW

(1) Respondent's July 2, 1990 conviction for violation of section 1801(a), Article 37 of the Tax Law of the state of New York is a conviction under Rule 214(d), Pa.R.D.E.

(2) Respondent's conviction constitutes a per se independent basis for discipline under Rule 203, Pa.R.D.E.

## DISCUSSION

Respondent's criminal conviction provides the basis for discipline under Pennsylvania Disciplinary Rules because it involves two misdemeanors punishable by up to one year of imprisonment and a fine of up to $10,000. See Rule 203, Pa.R.D.E.; *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 584 A.2d 296 (1990). Therefore, the only issue before the Disciplinary Board is the appropriate measure of discipline.

In ascertaining the correct discipline, the Disciplinary Board must "consider the events which surround the criminal charge in order 'to weigh the impact of the conviction upon the measure of discipline.'" *Office of Disciplinary Counsel v. Troback,* 477 Pa. 318, 383 A.2d 952 (1978).

The instant proceedings arose from respondent's notice to the Disciplinary Board that he had been convicted in New York for failure to fulfill his personal income tax obligation.

Respondent has acknowledged wrongdoing in both the stipulation of facts and his brief. He was also very contrite when he appeared before the Hearing Committee. Re-

spondent explained to the committee that his conviction was the result of personal financial mismanagement and an embarrassment about his fiscal irresponsibility. Throughout the disciplinary proceeding he stressed the fact that his personal problems in no way mitigated, but rather explained, his misconduct.

Respondent's conviction stemmed from a New York state probe into attorney mishandling of personal tax liability. Respondent and several other members of the New York bar were convicted for failure to fulfill personal income tax obligations. It is critical to note that respondent has never before been the subject of any disciplinary proceeding in New York, Florida, or Pennsylvania, where he is licensed to practice, and that the investigation uncovered personal, not professional, tax improprieties. Respondent has never offered legal advice in the area of tax law, and has no plans to do so in the future.

We also note that respondent, while licensed to practice law in this Commonwealth, has only one client in Pennsylvania and no plans to expand his practice here. This client, like all of respondent's other clients, was in no way harmed by his personal misconduct. Although the bar is never receptive to the wrongdoing of one of its members, the Pennsylvania bar was also not significantly hurt by respondent's personal transgressions. The underlying offenses which led to the instant proceeding provides us with an independent basis of discipline although it occurred outside of Pennsylvania. It is relevant, although not binding, to note that the disciplinary counsel in the state where the offense occurred has recommended that respondent receive a public censure for his misconduct.

Pennsylvania disciplinary case law, premised on the notion that each case is unique and must be examined according to its own factual circumstances, would also

permit the imposition of a public censure in this instance. See *In re Anonymous No. 68 D.B. 85,* 41 D.&C.3d 480 (1986); *In re Anonymous No. 52 D.B. 87,* 2 D.&C.4th 579 (1989). The imposition of a public censure would adequately satisfy both the interests of the public and the need to maintain the integrity of the bar. See *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be subjected to a public censure.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Ms. McGivern dissents and would recommend a six-month suspension.

Ms. Flaherty and Messrs. Gilardi and Eckell did not participate in the adjudication.

## ORDER

And now, September 1, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated May 4, 1992, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of one year and one day, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.