**Office of Disciplinary Counsel v. Coleman**

Disciplinary Board Docket no. 98 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

PIETRAGALLO, *Member,* January 24, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On July 24, 2003, Office of Disciplinary Counsel filed a petition for discipline against respondent, Thomas Joseph Coleman III. The petition charged respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement arising out of the unauthorized practice of law while on inactive status. Respondent filed an answer to petition on September 4, 2003.

A disciplinary hearing was held on December 17, 2003, before Hearing Committee 2.10 comprised of Chair Steven Howard Berkowitz, Esquire, and Members Anna M. Durbin, Esquire and Karen J. Schular, Esquire. Respondent was represented by James C. Schwartzman, Esquire.

Following the submission of briefs by the parties, the Hearing Committee filed a report on September 2, 2004, finding that respondent violated the rules as charged in the petition for discipline and recommending that respondent be suspended for one year and one day.

Respondent filed a brief on exceptions on October 12, 2004. Petitioner filed a brief opposing exceptions on October 28, 2004.

This matter was adjudicated by the board at the meeting of November 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsyl-

vania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Thomas Joseph Coleman III, was born in 1963 and was admitted to practice law in Pennsylvania in 1990. Respondent is also admitted to the bar of the State of New Jersey and maintains his office at 325 New Albany Road, Moorestown, NJ 08057. Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(3) Respondent has no prior history of discipline.

(4) By order dated November 22, 1993, the Supreme Court of Pennsylvania transferred respondent to inactive status pursuant to Pa.R.D.E. 219, effective 30 days from the date of the order.

(5) By cover letter dated November 30, 1993, Elaine M. Bixler, secretary of the Disciplinary Board, mailed to respondent at his registration address the following:

(a) A copy of the order of the Supreme Court dated November 22, 1993;

(b) Standard Guidance of the Disciplinary Board to lawyers who have been transferred to inactive status;

(c) Rules 217 and 219 of the Pa.R.D.E;

(d) Subchapter E, Formerly Admitted Attorneys, of the Disciplinary Board Rules;

(e) Form D.B.-23, Nonlitigation notice of disbarment, suspension or transfer to inactive status;

(f) Form D.B.-24, Litigation notice of disbarment, suspension or transfer to inactive status; and

(g) Form D.B.-25, Statement of compliance.

(6) Ms. Bixler's November 30, 1993 letter was sent by certified mail, return receipt requested.

(7) Ms. Bixler's letter was signed for by respondent's agent at his New Jersey law firm on or about December 2, 1993.

(8) Respondent has no present recollection of having received a letter from Ms. Bixler, but has no reason to think such documents were not received, and does not doubt the veracity of the allegations.

(9) By order dated June 17, 1994, the Supreme Court of Pennsylvania transferred respondent to inactive status, pursuant to Rule 111(b), Pa.R.C.L.E., effective 30 days after the date of the order.

(10) By cover letter dated June 22, 1994, Ms. Bixler mailed to respondent at his registered address the following:

(a) A copy of the certified Supreme Court order dated June 17, 1994.

(b) A letter prepared by the Continuing Legal Education Board which provided information regarding compliance with the rules;

(c) Pa.R.D.E. 217 and sections 91.91 to 91.99 of the Disciplinary Board Rules.

(d) Forms D.B.-23 and D.B.-24; and

(e) Form D.B.-25.

(11) Ms. Bixler's June 22, 1994 letter was sent by certified mail, return receipt requested.

(12) The letter was received by respondent's agent at his New Jersey law firm.

(13) Respondent has no present recollection of having received a letter from Ms. Bixler dated June 22, 1994, but has no reason to think that such a document was not received and does not doubt the veracity of the allegations.

(14) Prior to August 1995, the Administrative Office of Pennsylvania Courts (Lawyer Assessment) sent respondent an Attorney's Annual Fee form 1995-1996.

(15) On August 18, 1995, respondent or respondent's agent at his law firm signed or caused to be signed respondent's 1995-1996 form.

(16) On August 18, 1995, respondent or his agent sent or caused to be sent to Lawyer Assessment the Attorney Fee form and check for $325.

(17) By letter dated August 22, 1995, addressed to respondent at his registered address, Suzanne E. Sipes, Attorney Registrar, advised that the CLE Board had not certified that respondent had complied with his CLE requirements, his registration form was being processed as inactive, and his firm would be reimbursed the fee of $325.

(18) Respondent was employed as an associate in the law firm of Montgomery, McCracken, Walker & Rhoads (MMW&R) at the Cherry Hill, New Jersey office from October 9, 1995 to September 14, 2001.

(19) MMW&R handled attorney licensing on a firm-wide basis, coordinated by Human Resources. Human Resources received the fee forms and then provided them to the individual attorney for signature and dating. The

attorney was responsible to review the information on the form for accuracy. The Legal Recruitment manager then reviewed the signed form for completeness and mailed in one check and all individual forms to Lawyer Assessment.

(20) On May 21, 1996, Lawyer Assessment sent a 1996-1997 Attorney Annual Fee form to respondent at MMW&R.

(21) Respondent's 1996-1997 form listed him as being on inactive status since December 1993.

(22) On May 31, 1996, respondent or his agent marked off the box on the form that indicated respondent desired active status, enclosed payment of $325, and listed respondent's office address as 123 South Broad Street, Philadelphia PA 19109.

(23) Respondent signed the 1996-1997 form.

(24) Respondent or his agent sent the fee form and check to Lawyer Assessment.

(25) By letter dated July 31, 1996, addressed to MMW&R, 123 South Broad Street, Philadelphia, PA 19109, Suzanne Sipes acknowledged receipt of respondent's fee form and the $325 check, advised respondent that the Continuing Legal Education Board had not certified that respondent had complied with the CLE Rules, advised respondent that his registration form would be processed as inactive and that his law firm would receive a refund of $325.

(26) At some time in 1997, Lawyer Assessment sent a 1997-1998 Attorney Annual Fee form addressed to respondent at MMW&R in Cherry Hill, New Jersey.

(27) Respondent or his agent forwarded the signed 1997-1998 fee form to Lawyer Assessment and indicated that respondent desired to voluntarily assume inactive status and discontinue the practice of law in Pennsylvania.

(28) On February 16, 1999, respondent filed with the Disciplinary Board a motion for waiver of Disciplinary Board Rule section 89.279(a) in conjunction with petition for reinstatement to active status; a petition for reinstatement from inactive status, and a special reinstatement questionnaire.

(29) By letter dated March 5, 1999, addressed to Elaine M. Bixler and copied to respondent, Office of Disciplinary Counsel set forth its position of opposition to respondent's motion for waiver.

(30) By order of March 15, 1999, the Disciplinary Board denied respondent's motion for waiver and required respondent to complete the current schedule of continuing legal education courses necessary for reinstatement.

(31) By cover letter of March 15, 1999, Ms. Bixler transmitted the board order to respondent.

(32) To date, respondent has not been reinstated to active status in Pennsylvania.

(33) To date, respondent has failed to file with the Disciplinary Board a verified statement in conformance with Pa.R.D.E. 217(e).

(34) Respondent is not in compliance with his CLE credits.

(35) From January 2002 through on or about October 18, 2002, respondent signed numerous pleadings in mort-

gage foreclosure actions and allowed them to be filed in various Courts of Common Pleas in Pennsylvania by the law office of Michael J. Milstead.

(36) The following counts are a sampling of respondent's signed pleadings that were submitted to Pennsylvania Courts of Common Pleas in Schuylkill County during the year 2002. An additional list of cases is found in exhibit P-28.

(37) With regard to all pleadings specified, respondent never notified or caused to be notified in any manner, (1) the client involved in the litigation; (2) the attorney for the adverse party; (3) the court of his transfer to inactive status and of his inability to act as an attorney.

### Count I

(38) On January 7, 2002, respondent signed a complaint in the mortgage foreclosure on behalf of the plaintiff in the matter of *First Union National Bank of Delaware, f/k/a First Union Home Equity Bank v. Clara N. Lymaster.* He allowed the law office of Michael J. Milstead to file the complaint in the Schuylkill County Court of Common Pleas.

(39) On February 8, 2002, respondent signed and allowed the law office of Michael J. Milstead to file a praecipe to dismiss complaint without prejudice.

(40) Respondent identified himself as the attorney for the plaintiff.

### Count II

(41) On February 13, 2002, respondent signed a complaint in a mortgage foreclosure on behalf of plaintiff in the matter of *Bank of New York v. Lawrence Neff,* and

allowed the law office of Michael J. Milstead to file that complaint in the Schuylkill County Court of Common Pleas.

(42) On June 17, 2002, respondent signed and allowed the Milstead law office to file a praecipe to dismiss complaint without prejudice.

(43) Respondent identified himself as the attorney for the plaintiff.

## Count III

(44) On February 14, 2002, respondent signed a complaint in a mortgage foreclosure on behalf of the plaintiff in the matter of *Home Equity Servicing Corporation, f/k/a TMS Mortgage Inc., d/b/a The Money Store v. Joshua and Susan Guthrie,* and allowed the Milstead law office to file that complaint in the Schuylkill County Court of Common Pleas.

(45) On July 12, 2002, respondent signed and allowed the Milstead law office to file a praecipe to enter default judgment.

(46) On August 30, 2002, respondent signed and allowed the Milstead law office to file a praecipe for writ of execution.

(47) On September 20, 2002, respondent signed and allowed the Milstead law office to file a withdrawal of appearance.

(48) Respondent identified himself as attorney for the plaintiff.

## Count IV

(49) On March 19, 2002, respondent signed a mortgage foreclosure action on behalf of the plaintiff in the

matter of *First Union National Bank of Delaware, f/k/a First Union Home Equity Bank N.A. v. Estate of Clara Lymaster,* and allowed the Milstead law office to file the action in the Court of Common Pleas of Schuylkill County.

(50) On September 20, 2002, respondent signed and allowed the Milstead law office to file a withdrawal of appearance.

(51) Respondent identified himself as attorney for the plaintiff.

### Count V

(52) On February 14, 2002, respondent signed a mortgage foreclosure action on behalf of the plaintiff in the matter of *Bank of New York, as Trustee Under the Pooling and Servicing Agreement Dated as of November 30, 1996, Series 1996-D v. Brad G. Murray,* and allowed the Milstead law office to file the action in the Schuylkill County Court of Common Pleas.

(53) On June 20, 2002, respondent signed and allowed the Milstead law office to file a praecipe to reinstate complaint in mortgage foreclosure.

(54) On August 27, 2002, respondent signed and allowed the Milstead law office to file a praecipe for writ of execution.

(55) Respondent identified himself as attorney for the plaintiff.

### Count VI

(56) On April 29, 2002, respondent signed a complaint in mortgage foreclosure on behalf of the plaintiff in *First*

*Union National Bank of Delaware v. Albert and Jacqueline Ragazinsky,* and allowed the Milstead law office to file it in the Schuylkill County Court of Common Pleas.

(57) On August 15, 2002, respondent signed and allowed the Milstead law office to file a praecipe to reinstate complaint in mortgage foreclosure.

(58) Respondent identified himself as attorney for the plaintiff.

## Count VII

(59) On May 14, 2002, respondent signed a complaint in confession of judgment on behalf of the plaintiff in the matter of *Amresco Commercial Finance Inc. v. Jerry and Phyllis Munger,* and allowed the Milstead law office to file the complaint in the Court of Common Pleas of Schuylkill County.

(60) On July 8, 2002, Joseph H. Jones Jr., attorney for defendant, filed defendant's petition to strike or open judgment in the *Munger* confession of judgment matter.

(61) On July 29, 2002, respondent signed and allowed the Milstead law office to file a withdrawal of appearance.

(62) Respondent identified himself as attorney for the plaintiff.

## Count VIII

(63) On May 17, 2002, respondent signed a complaint in mortgage foreclosure on behalf of the plaintiff in the matter of *Amresco Commercial Finance Inc. v. Jerry and Phyllis Munger and Swatara Management Group LLC,*

and allowed the Milstead law office to file that complaint in the Schuylkill County Court of Common Pleas.

(64) On June 18, 2002, Joseph H. Jones Jr., counsel for the defendants, filed preliminary objections.

(65) The preliminary objections contained a motion to strike the complaint on the basis that the respondent was not licensed to practice law in Pennsylvania.

(66) On July 5, 2002, respondent signed and allowed the Milstead law office to file a praecipe to dismiss complaint without prejudice.

(67) Respondent held himself out as attorney for the plaintiff.

### Count IX

(68) On June 17, 2002, respondent signed a mortgage foreclosure action on behalf of the plaintiff in the matter of *First Union National Bank v. John and Victoria Koszyk,* and allowed the Milstead law office to file that action in the Court of Common Pleas of Schuylkill County.

(69) On September 20, 2002, respondent signed and allowed the Milstead law office to file a withdrawal of appearance.

(70) Respondent identified himself as attorney for the plaintiff.

### Count X

(71) On July 2, 2002, respondent signed a mortgage foreclosure action on behalf of the plaintiff in the matter of *J.P. Morgan Chase Bank v. John Valentine and the*

*United States of America,* and allowed the Milstead law office to file that action in the Court of Common Pleas of Schuylkill County.

(72) On August 8, 2002, respondent signed and allowed the Milstead law office to file a praecipe to reinstate complaint in mortgage foreclosure.

(73) On September 20, 2002, respondent signed and allowed the Milstead law office to file a withdrawal of appearance.

(74) Respondent identified himself as attorney for the plaintiff.

## Other Findings of Fact

(75) Michael J. Milstead is a licensed New Jersey attorney with a practice that concentrates on performing foreclosure and bankruptcy services for mortgage brokers and investors.

(76) Mr. Milstead is not licensed to practice in Pennsylvania.

(77) In November 2001, Mr. Milstead became a tenant at 325 New Albany Road, Moorestown, New Jersey, where respondent was one of his landlords.

(78) In November 2001, Mr. Milstead had several conversations with respondent about the nature of Mr. Milstead's practice, at which time:

(a) Mr. Milstead informed respondent that he was using another Pennsylvania attorney to review and sign pleadings and documents in Pennsylvania for his foreclosure practice;

(b) Respondent informed Mr. Milstead that he was a member of the Pennsylvania Bar;

(c) The parties discussed the possibility of respondent replacing the other attorney in signing Mr. Milstead's Pennsylvania pleadings;

(d) Mr. Milstead asked respondent, and respondent agreed to sign pleadings and other litigation-related documents as attorney for the plaintiff in Pennsylvania;

(e) Mr. Milstead and respondent agreed that Mr. Milstead would pay respondent a nominal fee of $15 to $25 for each pleading respondent signed.

(79) At no time prior to June 2002 did respondent advise Mr. Milstead that he was on inactive status.

(80) Checks in the amount of $2,466.25 and $4,899.50 represented payments made by Mr. Milstead to respondent.

(81) Based upon respondent's representation to Mr. Milstead, he believed respondent was a licensed Pennsylvania attorney, and utilized letterhead that indicated "Of Counsel, Thomas Joseph Coleman III, Esquire, Licensed Pennsylvania Attorney." Mr. Milstead placed this caption on his letterhead.

(82) Mr. Milstead took no affirmative action to verify respondent's status as a licensed Pennsylvania lawyer.

(83) Near the end of June 2002, Mr. Milstead learned by receiving certain responsive pleadings in the *Munger* matter (Count VIII above) that there was a problem with respondent's Pennsylvania license.

(84) Mr. Milstead confronted respondent about his license. Respondent advised Mr. Milstead that his license in Pennsylvania was compromised due to a deficiency in his CLE credits.

(85) Respondent represented to Mr. Milstead that it was respondent's understanding, based on a conversa-

tion with someone from the Pennsylvania Bar or Board of Law Examiners, that he could still sign the Pennsylvania pleadings.

(86) Although respondent was on notice no later than June 2002 that there was a problem with his continued signing of Pennsylvania pleadings, respondent continued to sign such pleadings and did not withdraw his appearance in the Pennsylvania cases where he was attorney of record until September 2002.

(87) Despite being on notice that there was a problem with his ability to sign pleadings, respondent continued his practice of signing pleadings as set forth below:

(a) On July 12, 2002, respondent signed and allowed the Milstead law office to file a praecipe to enter default judgment in the *Guthrie* matter;

(b) On August 30, 2002, respondent signed and allowed the Milstead law office to file a praecipe for writ of execution in the *Guthrie* matter;

(c) On June 20, 2002, respondent signed and allowed to be filed a praecipe to reinstate complaint in the mortgage foreclosure in the *Murray* matter;

(d) On August 14, 2002, respondent signed and allowed to be filed a praecipe to enter default judgment in the *Murray* matter;

(e) On August 27, 2002, respondent signed and allowed to be filed a writ of execution in the *Murray* matter;

(f) On July 16, 2002, respondent signed and allowed to be filed a praecipe to reinstate complaint in the *Ragazinsky* matter;

(g) On August 15, 2002, respondent signed and allowed to be filed a praecipe to reinstate complaint in the mortgage foreclosure in the *Ragazinsky* matter;

(h) On August 22, 2002, respondent signed and allowed to be filed a praecipe to reinstate complaint in the *Ragazinsky* matter;

(i) On or about August 8, 2002, respondent signed and allowed to be filed a praecipe to reinstate complaint in the mortgage foreclosure in the *Valentine* matter.

(88) Respondent testified that he did not withdraw his appearance in the Pennsylvania cases after he received the pleadings in the *Munger* matter because he was busy and Mr. Milstead was out of the office.

(89) In September 2002, respondent brought to Mr. Milstead's attention the allegations of misconduct from Office of Disciplinary Counsel, and it was mutually agreed that respondent's signing of Pennsylvania pleadings should stop.

(90) Mr. Milstead had his staff prepare substitutions for every active matter in the approximately 300 Pennsylvania matters filed, for which respondent was counsel of record, and respondent's involvement with Mr. Milstead's office ceased.

(91) Respondent signed the pleadings under the belief that he was allowed to do so even though he was on inactive status. He thought that it was permissible as long as he did not take a more active role in the representation.

(92) Respondent understands now that his beliefs were incorrect.

(93) Five character witnesses testified on behalf of respondent. These witnesses all know respondent in a personal or professional capacity. Respondent has a very good reputation in his community as a truthful, honest and law-abiding person.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 1.16(a)(1)—A lawyer shall not represent a client, or where the representation has commenced, shall withdraw from the representation of a client if the representation will result in a violation of the Rules of Professional Conduct or other law;

(2) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction;

(3) R.P.C. 7.1(a)—A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services;

(4) R.P.C. 7.5(a)—A lawyer shall not use a firm name, letterhead or other professional designation that violates R.P.C. 7.1;

(5) R.P.C. 7.5(b)—A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located;

(6) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(7) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice;

(8) Pa.R.D.E. 217(d)—A formerly admitted attorney transferred to inactive status shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature;

(9) Pa.R.D.E. 217(j)—A formerly admitted attorney is precluded from engaging in law-related activities and representing himself or herself as a lawyer.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with the unauthorized practice of law while on inactive status. Specifically, respondent signed hundreds of pleadings as an attorney of record in Pennsylvania when he was not licensed to do so. The parties entered into a stipulation of facts. Petitioner presented the testimony of one witness. Respondent testified and presented the testimony of five character witnesses. Respondent does not contest that he committed the acts as alleged by petitioner. Based on the clear and convincing evidence presented at the hearing, there is no doubt that respondent violated the Rules of Professional Conduct and Rules of Disciplinary Enforcement.

Respondent attempted to mitigate his actions by presenting several character witnesses. These witnesses all testified that respondent is a truthful, honest and law-abiding person. Respondent also presented the fact that he has no prior disciplinary record. Upon consideration of these factors in light of respondent's misconduct, the board believes that they do not outweigh the aggravating factors present in this matter.

Respondent was not able to recollect many important aspects of his professional licensure proceedings in Pennsylvania, such as the Supreme Court order transferring him to inactive status, and letters from the Disciplinary Board in regard to his responsibilities as an inactive attorney. He had no recollection of receiving annual attorney fee forms from 1996 to 1998 nor did he remember filing a petition for reinstatement from inactive status in 1999.

Respondent believed he could sign Pennsylvania pleadings as an inactive attorney, yet never affirmatively verified this belief by calling the Disciplinary Board or otherwise checking.

Respondent was aware that he was on inactive status and aware that he needed to complete CLE credits. He also became aware in June 2002 that there were problems with his signatures on Pennsylvania pleadings. This was specifically brought to his attention in the *Munger* matter by the opposing attorney, who filed preliminary objections and a motion to strike on the basis that respondent was not licensed in Pennsylvania. In spite of this knowledge, respondent still took no action to determine for himself the strictures on his activities as an inactive attorney. He continued to sign documents for Attorney Milstead after June 2002 until September 2002.

There is no question that respondent engaged in serious misconduct by signing hundreds of pleadings in knowing violation of a Supreme Court order prohibiting him from the practice of law. This warrants a suspension of one year and one day.

The purpose of the disciplinary system is to protect the public from unfit attorneys and to maintain the in-

tegrity of the legal system. *Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 584 A.2d 296 (1990). In determining final discipline, precedent is considered due to the need for consistency in the results reached so that similar misconduct is not punished in radically different ways. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). There are numerous disciplinary cases concerning attorneys who continue to practice law after being transferred to inactive status for failing to fulfill their CLE credits or pay their annual fee. Generally, these attorneys are suspended from the practice of law. The principal rationale for this discipline is that fulfilling continuing legal education requirements, filing the annual fee form and paying the annual fee are not mere ministerial acts. Rather, an attorney has an affirmative duty to know the status of his professional license and to comply with professional requirements. *In re Anonymous No. 123 D.B. 96,* 41 D.&C.4th 290 (1998). Moreover, if there are aggravating factors or additional charges of misconduct, the Supreme Court has suspended attorneys for more than one year. A sampling of recent cases supports the imposition in the instant matter of a suspension of one year and one day.

In *Office of Disciplinary Counsel v. Harris,* 150 D.B. 2002, 930 disciplinary docket no. 3 (Pa. July 15, 2004), Mr. Harris received notice that he was transferred to inactive status for failing to complete his CLE requirements. In defiance of the Supreme Court order, Mr. Harris continued to practice and handle the legal matters of one client. He also kept the indicia of his licensure by maintaining a large office sign advertising himself as a lawyer. Mr. Harris had received two informal admoni-

tions in the past. He was suspended for one year and one day.

The Supreme Court imposed a suspension of one year and one day on an attorney who continued to practice after he was transferred to inactive status for failing to complete his CLE requirements. *Office of Disciplinary Counsel v. Enright,* no. 136 D.B. 2002, 890 disciplinary docket no. 3 (Pa. March 14, 2004). Mr. Enright knowingly continued to provide services to his client and filed a petition for appeal in a license suspension case. Mr. Enright failed to appear for his disciplinary hearing.

Even when an attorney claims he never received notice of his transfer to inactive status, the court has imposed a suspension of one year and one day. *Office of Disciplinary Counsel v. Forman,* no. 70 D.B. 2001, 799 disciplinary docket no. 3 (Pa. Jan. 31, 2003). Mr. Forman practiced law for 12 years while on inactive status. Although he attempted to excuse himself by claiming he never received notification, the record demonstrated that Mr. Forman never provided his new address to the board as mandated by the Rules of Disciplinary Enforcement.

In *Office of Disciplinary Counsel v. Holder,* no. 131 D.B. 1999, 660 disciplinary docket no. 3 (Pa. March 23, 2001), Mr. Holder was aware that he was inactive due to CLE deficiencies, but continued to enter his appearance and attend court hearings on behalf of five clients during a three-month time period. The Supreme Court suspended Mr. Holder for one year and one day.

In sum, the Supreme Court does not tolerate lawyers who take a lax approach to the administrative rules governing the practice of law. Respondent's argument that no client or member of the public was harmed appears

immaterial in light of the court's determinations in past discipline cases. Even in situations where lawyers lack disciplinary records and have otherwise good reputations, the court has found their misconduct contemptuous and has suspended these lawyers for one year and one day, thus obligating the lawyers to petition for reinstatement in the future.

Application of this strong line of precedent leads to the conclusion that respondent should be suspended for one year and one day.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Thomas Joseph Coleman, be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Sheerer, O'Connor and Suh dissented and would recommend a two-year suspension.

Board Member Nordenberg did not participate in the November 17, 2004 adjudication.

---

## DISSENT TO THE MAJORITY REPORT & RECOMMENDATION OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

O'CONNOR, *Member,* January 25, 2005—The undersigned respectfully files the following dissent from the

recommendation of the majority recommendation in the above matter:

No objection is taken to the findings of fact or conclusion of law. This dissent is to the recommendation of only a year and one day suspension.

## DISCUSSION

As the court is aware, violations of Pa.R.D.E. 217 are unfortunately brought on a regular basis before the Disciplinary Board. The recommendation that is almost always seen appears to be for a suspension of one year and a day no matter if the violation is for one occurrence or, as in this case, over 250. It also appears to make little difference if the violations occur over a short period of time or over an extended period of time, and that is why this dissent is made.

In this matter, Mr. Coleman was inactive for about nine years. He was notified in 1993, 1994, 1995 and 1996 that he was on inactive status. Apparently, in 1997 Mr. Coleman requested he be allowed to resume active status, and in 1999 he requested a waiver from the rules and petitioned for reinstatement. Despite all of the knowledge of his status, Mr. Coleman continued to represent himself as a licensed attorney and to sign legal documents.

While the complaint cites only 10 matters, many more are referenced and, interestingly enough, even after Mr. Coleman knew in 2002 there was a question as to his ability to practice, he continued to sign legal documents.

The Hearing Committee and the board found nine violations of the Rules of Professional Conduct and Disciplinary Enforcement. In addition, the Hearing Committee found Mr. Coleman was less than candid about receiving compensation and what the fees were given to him for.

At some time a suspension of more than one year and a day needs to be recommended, and the undersigned respectfully represents this is an appropriate case.

Considering the length of time involved, the number of violations, the acknowledgement that he knew he was on inactive status and his lack of candor with the Hearing Committee, it is respectfully recommended the suspension be for two years.

Board Members Sheerer and Suh join in this dissent.

## ORDER

And now, April 19, 2005, upon consideration of the report and recommendations of the Disciplinary Board and dissent to the majority report and recommendations of the Disciplinary Board dated January 24, 2005, it is hereby ordered that Thomas Joseph Coleman III, be and he is suspended from the bar of this Commonwealth for a period of two years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.