639 A.2d 782

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**John Rodes CHRISTIE, Respondent.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1993.

Decided March 28, 1994.

John R. Christie, pro se.

Suzy S. Moore, Norristown, for Asst. Disciplinary Counsel.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This matter is before us upon a Report and Recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania (board). A majority of the board recommended that the respondent, John Rodes Christie, be suspended from the practice of law for a period of three years and forty-five days, retroactive to April 16, 1990. A minority of the board dissented, believing that the recommended discipline was not sufficiently harsh. We issued a rule to show cause why respondent should not be disbarred.

In attorney discipline cases, our review is *de novo;* we are not bound by the findings of the hearing committee or the board. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 161, 553 A.2d 894, 895 (1989). Nevertheless, we give substantial deference to the findings and recommendations of the board. *Id; Office of Disciplinary Counsel v. Costigan,* 526 Pa. 16, 20, 24, 584 A.2d 296, 298, 300 (1990). *See also Office of Disciplinary Counsel v. Eilberg,* 497 Pa. 388, 391, 441 A.2d 1193, 1195 (1982) (The board's findings and recommendations, although advisory in nature, are often persuasive.).

The facts giving rise to this case are not in dispute. Having reviewed the record *de novo,* we make the following findings, which, in large part, parallel the findings of the board.

Respondent was admitted to the bar in Pennsylvania and Delaware in 1985. In 1988, he pled guilty in Delaware to thirteen misdemeanor sex offenses involving two minors. As a result, the Supreme Court of Delaware suspended him from the practice of law in that state for a period of three years, commencing April 16, 1990.

Subsequently, the Pennsylvania Office of Disciplinary Counsel brought this matter to our attention pursuant to Pa.R.D.E. 216 (reciprocal discipline). We did not impose reciprocal discipline, but rather, on May 21, 1991, referred the case to the board pursuant to Pa.R.D.E. 214 (criminal convictions as grounds for disciplinary action). At the same time, we ordered that respondent be temporarily suspended from the practice of law in Pennsylvania.

The Office of Disciplinary Counsel then filed a petition for discipline, charging that respondent had been convicted of crimes, and alleging that the crimes involved moral turpitude and adversely reflected upon respondent's fitness to practice law. See DR 1–102(A)(3) and DR 1–102(A)(6). Respondent filed an answer admitting the misconduct. Hearings were held, and respondent submitted a brief in support of his own suspension. The hearing committee filed a report recommending that respondent be suspended for a period of three years and forty-five days, retroactive to April 16, 1990, the date when respondent began his three-year suspension from the Delaware bar. The period of suspension recommended by the hearing committee was designed to expire at the end of respondent's term of probation, on May 30, 1993.

The crimes committed by respondent took place in Delaware, during a ten day period in 1987. On separate occasions between January 22 and February 1, 1987, respondent invited two male minors, ages 12 and 14, to his apartment. Respondent provided the minors with alcoholic beverages, showed them x-rated video tapes, and masturbated in their presence.

As a result, respondent was arrested and charged with thirteen counts of misdemeanor sex offenses including four counts of sexual harassment, three counts of indecent expo-

sure, three counts of endangering the welfare of a child, and three counts of unlawfully dealing with a child. *See* 11 Del.Code §§ 763, 765, 1102, and 1106. In 1988, respondent pled guilty to each of the thirteen counts.

Respondent was sentenced to undergo five years of supervised adult probation, participate in therapeutic treatment programs, perform 150 hours of unpaid community service work, mail letters of apology to the families of his minor victims, and pay restitution for therapeutic expenses incurred by the victims. An additional sanction was included in respondent's plea agreement, wherein respondent agreed not to practice law in any state, nor apply for admission to the bar in any state, during any period of suspension imposed by the Supreme Court of Delaware.

Respondent has fully complied with all aspects of the sentence and disciplinary sanctions imposed in Delaware.

In addition, respondent has demonstrated a high level of cooperation throughout the proceedings against him. On the date of his arrest in Delaware, he gave a full confession to the police. On the same day he also notified Delaware Disciplinary Counsel, as well as a judge for whom he worked as a law clerk, and his uncle, who was the Chief Justice of the Delaware Supreme Court. He immediately tendered his resignation as a law clerk, and agreed with Disciplinary Counsel not to practice law pending the resolution of disciplinary proceedings.

In 1987, shortly after his arrest, respondent voluntarily entered a program at Johns Hopkins University for treatment of sexual disorders. The program included three weeks as an inpatient, followed by approximately nine months of weekly outpatient sessions involving two and one-half hours of group therapy per week. Subsequently, respondent continued to attend therapy sessions once every two weeks until June of 1991.

Since that time respondent has attended therapy sessions once every other month, as directed by his psychiatrist, even though normal outpatient therapy programs at Johns Hopkins

end after two years. This has been done to demonstrate his moral fitness and to establish that he is sincere in his efforts to cure himself of his condition.

The condition for which respondent was treated is known as non-exclusive or regressed homosexual pedophilia. This is a psychological disorder which causes respondent to be sexually attracted to both minor and adult males. It is not a voluntary condition. It is, however, a treatable one. Respondent is considered to have a low risk, 10%, of recidivist behavior. However, he could be at a higher risk insofar as minor clients are concerned. Hence, his psychiatrist and other experts are in agreement that constraints or chaperons would be appropriate if respondent were to deal with any minor clients. Respondent agrees.

In addition to treatment for his sexual disorder, respondent received treatment for depression from the time of his arrest in February of 1987 until July of 1989. This involved thirty-three visits with a psychiatrist. Respondent also met with a counselor on six occasions to deal with issues of homosexuality and depression.

Respondent states that since the time of his arrest he has not committed any further offenses. He further states that he has not come close to committing any further offenses and that he has disassociated himself from all organizations that include adolescents. He now socializes only with people over the age of 18 years, and has declared his intent to conduct himself accordingly in the future. Consistent with this intent, he performs volunteer work for a geriatric services agency in Delaware.

The two minors involved in the crimes committed by respondent were not his clients. Further, none of the crimes involved any sexual contact with the minors.

When the crimes were committed, respondent was 27 years old and knew that what he was doing was wrong, but, because of his psychological disorder, was able to rationalize his misconduct. Respondent now shows substantial remorse for his actions. He is embarrassed, ashamed, and fully committed to

correcting his problem. Further, aside from the present matter, he has no history of disciplinary sanctions or criminal offenses.

Nevertheless, respondent's conviction on thirteen counts of misdemeanor sex offenses provides a clear basis for discipline under Pa.R.D.E. 203, 214. The sole issue presented is the exact measure of discipline to be imposed.

■ The criminal laws of Delaware have already provided respondent with punishment for his abhorrent misconduct. Disciplinary sanctions, in contrast, are not primarily designed for their punitive effects. *Office of Disciplinary Counsel v. Costigan,* 526 Pa. at 24, 584 A.2d at 300. Instead, disciplinary sanctions are intended to protect the public from unfit attorneys and maintain the integrity of the legal system. *Id. See also Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1185–86 (1987).

■ In any disciplinary case arising from a criminal conviction, the events surrounding the criminal charge must be taken into account when determining an appropriate measure of discipline. *Office of Disciplinary Counsel v. Eilberg,* 497 Pa. at 391, 441 A.2d at 1195. Consideration is to be given to any mitigating factors that are present. *Id.; Office of Disciplinary Counsel v. Costigan,* 526 Pa. at 23, 584 A.2d at 300. *See also Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). "Psychiatric disorder is an appropriate consideration as a mitigating factor in a disciplinary proceeding...." *Office of Disciplinary Counsel v. Braun,* 520 Pa. at 161, 553 A.2d at 895–96.

Expert testimony established that respondent suffers from a psychiatric condition, heretofore described, which causes an involuntary attraction to minor and adult males. The testimony further indicated that respondent's criminal conduct was induced by this psychiatric disorder rather than by any willful criminal design.

Additional factors of a mitigating nature are respondent's lack of any prior disciplinary or criminal record, cooperation with authorities, remorse, apology to his victims, and contin-

ued participation in therapy. The expert testimony that respondent is at low risk for recidivist behavior is likewise a factor of importance.

■ We note, too, that respondent's criminal behavior did not in any way involve his clients or the practice of law. This fact, although fortunate, does not extinguish the need for discipline. *Office of Disciplinary Counsel v. Ewing*, 496 Pa. 35, 45, 436 A.2d 139, 144 (1981).

We do not believe it necessary, however, to disbar respondent in order to protect the public and maintain the integrity of the legal system.

■ Disbarment is an extreme sanction which must be used in only the most egregious cases, because it represents a termination of the license to practice law without a promise of its restoration at any future time. *Office of Disciplinary Counsel v. Stern*, 515 Pa. at 81, 526 A.2d at 1186. In contrast, suspension is a withdrawal of the privilege of practicing law for a specified period not to exceed five years. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 578, 506 A.2d 872, 874–75 (1986). Upon the expiration of a period of suspension, an attorney can resume the practice of law upon a demonstration of his fitness to practice. *Id.* See Pa.R.D.E. 218 (procedure governing reinstatement after term of suspension).

■ We agree with the recommendation of the board that respondent's actions warrant a suspension. Although the Office of Disciplinary Counsel has suggested that disbarment or a period of suspension longer than that proposed by the board is in order, we will defer to the considered recommendation of the board to the extent that disbarment is not warranted, but impose a suspension for five years, retroactive to April 16, 1990, which is more severe than recommended by the board.

This result takes into account the fact that respondent's criminal conduct was caused by an involuntary psychiatric disorder for which extensive treatment has been obtained. It also reflects respondent's lack of any prior disciplinary or

criminal record, the low risk of recidivist behavior, and the cooperation, remorse, and reformative efforts demonstrated by respondent.

■ In addition to the period of suspension hereby imposed, respondent shall comply with Pa.R.D.E. 217 and pay all costs of these proceedings pursuant to Pa.R.D.E. 208(g).*

LARSEN, J., did not participate in the decision of this case.

PAPADAKOS, J., concurs in the result.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

---

* In the event that respondent petitions for reinstatement pursuant to Pa.R.D.E. 218, this Court can, if it deems reinstatement warranted, fashion an order providing for limitation or supervision of contacts between respondent and minor clients.